IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

WESTFIELD INSURANCE COMPANY,

      Plaintiff,

v.

Civil Action No. <u>2:17-cv-01269</u>

STEVEN R. MATULIS, M.D.,
CHARLESTON GASTROENTEROLOGY
ASSOCIATES, P.L.L.C., T.W.,  K.H., T.F.,
J.L., A.G., B.D., A.H., A.M., C.S. and J.W. ,

      Defendants.

**WESTFIELD INSURANCE COMPANY'S**
**COMPLAINT FOR DECLARATORY RELIEF**

Comes now Westfield Insurance Company ("Westfield"), pursuant to Rule 57 of the Federal

Rules of Civil Procedure, *28 U.S.C. § 2201*, and *W.Va. Code § 55-13-1 et seq.*, which for its

Complaint for Declaratory Relief does state as follows:

**Jurisdiction**

1.      Westfield is an Ohio corporation, with its principal place of business in Westfield

Center, Ohio.

2.      Steven R. Matulis, M.D. is resident and a citizen of Charleston, Kanawha County,

West Virginia.

3.      Charleston Gastroenterology Associates, PLLC is a West Virginia professional

limited liability company, with its principal place of business in Charleston, Kanawha County, West

Virginia.

30053/118

4.      T.W. [1] is, upon information and belief, a citizen and resident of West Virginia.

5.      K. H. is, upon information and belief, a citizen and resident of West Virginia.

6.      T. F.  is, upon information and belief, a citizen and resident of West Virginia.

7.      J.L.  is, upon information and belief,  a citizen and resident of West Virginia.

8.      A.G. is, upon information and belief,  a citizen and resident of West Virginia.

9.      B.D.  is, upon information and belief, a citizen and  resident of  West Virginia.

10.     A. H.. is, upon information and belief, a citizen and  resident of  West Virginia.

11.     A.M.  is, upon information and belief, a citizen and  resident of  West Virginia.

12.     C.S.  is, upon information and belief, a citizen and  resident of  West Virginia.

13.     J.W.  is, upon information and belief, a citizen and  resident of  West Virginia.

14.     The transactions giving rise to this Complaint for Declaratory Relief occurred in

Kanawha County, West Virginia.

15.     This Court has venue and jurisdiction over this matter pursuant to 28 U.S.C. § 2201,

based upon complete diversity of citizenship between the parties and an amount in controversy in

excess of $75,000.

### Factual Background

16.     T.W., K.H., T.F., J.L., A.G., B.D., A.H., A.M., C.S., and J.W. (hereinafter

collectively referred to as "the Claimants") have alleged that, on various dates, they underwent a

colonoscopy performed by Defendant Steven R. Matulis, M.D. after having been anesthetized and

_____

[1]  Due to the nature of the underlying allegations of sexual assault and in order to protect
the privacy of the individuals involved, Westfield has identified the claimants in this case by
their initials only.

rendered unconscious.

17.     One or more of the Claimants have alleged that without their knowledge or consent, and while under anesthesia and incapacitated, Dr. Matulis sexually assaulted them and/or inappropriately placed his hands upon them, and that Dr. Matulis performed their colonoscopies while distracted or impaired, such that the colonoscopies they received were not medically reliable or performed within the applicable standard of care due to Dr. Matulis' alleged perversions and proclivity for sexually assaulting unconscious female patients during colonoscopies.

18.     One or more of the Claimants have alleged that Dr. Matulis' sexual assaults were witnessed by one or more employees of Charleston Area Medical Center Memorial Division ("CAMC").

19.     One or more of the Claimants have also alleged that following a procedure, employees of CAMC reported the alleged sexual assault to the hospital administration.

20.     One or more of the Claimants have alleged that Dr. Matulis' privileges to practice at CAMC were suspended on February 16, 2016, pending an investigation.

21.     One or more of the Claimants have also alleged that on March 16, 2016, Dr. Matulis' privileges to practice at CAMC were permanently revoked.

22.     One or more of the Claimants have alleged that after learning of the sexual assault of one of Dr. Matulis' patients, they became concerned that they too had been the victim of sexual assault or had suffered damages due to the fact that the colonoscopies they received were not medically reliable or performed within the applicable standard of care due to Dr. Matulis' alleged perversions and proclivity for sexually assaulting unconscious female patients during colonoscopies.

22.     A number of the Claimants have filed civil actions against Dr. Matulis in the Circuit

Court of Kanawha County, seeking damages for his alleged misconduct.  Upon information and

believe, the civil actions are identified as Civil Action Nos. 16-C-497, 16-C-1155, 16-C-1709, 16-C-

1723, 16-C-1738 and 16-C-1553 (hereinafter collectively referred to as "the underlying civil

actions.").

23.     In the underlying civil actions, the Claimants have alleged that Charleston

Gastroenterology, either knew or should have known, prior to February 16, 2016, that Dr. Matulis

had sexually assaulted female patients who were incapacitated from anesthesia.

24.     In the underlying civil actions, the subject Claimants have also alleged that Charleston

Gastroenterology either knew or should have known that Dr. Matulis was unfit to practice medicine.

25.     In the underlying civil actions, the subject Claimants have alleged that the conduct

of Dr. Matulis and/or Charleston Gastroenterology was negligent, reckless, wilful, wanton and

intentional misconduct, which caused the Claimants physical and emotional harm.

26.     In the underlying civil actions, the subject Claimants have also alleged that Charleston

Gastroenterology is responsible and liable for Dr. Matulis' acts.

27.     In the underlying civil actions, one or more of the Claimants have sought to assert a

claim on behalf of a class of West Virginia residents who are similarly situated in that the members

of said proposed classes also underwent colonoscopies performed by Dr. Matulis and were also

allegedly the victim of a sexual assault and/or suffered damages due to the inadequacy of the

colonoscopies they received.

## THE WESTFIELD POLICY

28.     At the time of the events as alleged by the Claimants,  Charleston Gastroenterology

Associates was insured under a policy of insurance issued by Westfield identified as Policy No. BOP

3157951 ("the Policy"), with effective dates of coverage from March 21, 2015 to March 21, 2016.

29.    The Policy provides, in relevant part, as follows:

| | |
|---|---|
| **COMPANY PROVIDING COVERAGE** | **WESTFIELD INSURANCE COMPANY** |
| **NAMED INSURED AND MAILING ADDRESS** | |
| **CHARLESTON GASTRONENTEROLOGY** | |
| **3100 MACCORKLE AVENUE, SE** | |
| **SUITE 509** | |
| **CHARLESTON WV 25304** | |
| **Policy number: BOP 3 157 951** | |
| **Policy**       **From**    **03/21/15** | |
| **Period**       **To**       **03/21/16** | |
| **Business: PHYSICIAN OFFICE** | **Named Insured is: Corporation** |

\* \* \*

**\*\* SCHEDULE OF NAMED INSURED \*\***

**CHARLESTON GASTROENTEROLOGY ASSOCIATES**

**3100 MACCORKLE AVENUE, SE**

**SUITE 509**

**CHARLESTON WV   25304**

\* \* \*

**BUSINESSOWNERS COVERAGE FORM**

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form, the words "you" and "your" rights refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to the company providing this insurance.

In Section **II** - Liability, the word "insured" means any person or organization qualifying as such under Paragraph C.  Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning.  Refer to Paragraph H.  Property Definitions in Section **I** - Property and Paragraph F. Liability and Medical Expenses Definitions in Section **II** - Liability.

* * *

## SECTION II - LIABILITY

A.    **Coverages**

    1.    **Business Liability**

        **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suite" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages or "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result.  But:

            **(1)**    The amount we will pay for damages is limited as described in Paragraph **D**. - Liability And Medical Expenses Limits Of Insurance in Section **II** - Liability; and

            **(2)**    Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension - Supplementary Payments.

        **b.**    This insurance applies:

            **(1)**    To "bodily injury" and "property damage" only if:

    **(a)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(b)**    The "bodily injury" or "property damage" occurs during the policy period; and

    **(c)**    Prior to the policy period, no insured listed under Paragraph C.1. Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**(2)**    To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**c.**    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph C.1. Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph C.1. Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to use or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\* \* \*

**2. Medical Expenses**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** the injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

\* \* \*

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

a.  **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\* \* \*

j.  **Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

\* \* \*

(4)  Medical, surgical, dental, x-ray or nursing services treatment advise or instructions;

(5)  Any health or therapeutic service treatment, advise or instruction;

\* \* \*

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

\* \* \*

2.  **Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

\* \* \*

g.  Excluded under Business Liability Coverage.

\* \* \*

C.    **Who Is An Insured**

1.    If you are designated in the Declarations as:

\* \* \*

d.    An organization other than a partnership, joint venture or limited liability company, you are an insured.   Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.   Your stockholders are also insureds, but only with respect to their liability as stockholders.

\* \* \*

2.    Each of the following is also an insured:

a.    Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.   However, none of these "employees" or "volunteer workers" are insureds for:

(1)    "Bodily injury" or "personal and advertising injury":

\* \* \*

(d)    Arising out of his or her providing or failing to provide professional heal care services.

\* \* \*

2.    **Duties In the Event Of Occurrence, Offense, Claim Or Suit**

a.    You must see to it that we are notified as soon as practicable of an "occurrence" of an offense which may result in a claim. To the extent possible, notice should include:

      **(1)**     How, when and where the "occurrence" of offense took place;

      **(2)**     The names and addresses of any injured persons and witnesses; and

      **(3)**     The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**     If a claim is made or "suit" is brought against any insured, you must:

      **(1)**     Immediately record the specifics of the claim or "suit" and the date received; and

      **(2)**     Notify us as soon as practicable.

     You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**     You and any other involved insured must:

      **(1)**     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      **(2)**     Authorize us to obtain records and other information;

      **(3)**     Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      **(4)**     Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because injury or damage to which this insurance may also apply.

**d.**     No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

* * *

F.    **Liability And Medical Expenses Definitions**

\* \* \*

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a.    False arrest, detention or imprisonment;

    b.    Malicious prosecution;

    c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

    e.    Oral or written publication in any manner, of material that violates a person's right of privacy;

    f.    The use of another's advertising idea in your "advertisement", or

    g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

17.    "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be

deemed to occur at the time of the physical injury that caused it;

b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

30.    Under the terms and conditions of the Policy, Westfield has agreed to pay those sums that an insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," or "personal and advertising injury" to which the Policy applies.

31.    The Claimants have not asserted any claim for "property damage," defined by the Policy as physical injury to tangible property, or loss of use of tangible property arising from an "occurrence."

32.    In addition the Claimants have presented no claim for "personal and advertising injury," which the Policy defines to include the following offenses:  False arrest, detention or imprisonment; malicious prosecution; the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises; oral or written publication of material that slanders or libels a person or organization; oral or written publication of material that violates a person's right of privacy; the use of another's advertising idea in an advertisement; and the infringement upon another's copyright, trade dress or slogan in an advertisement.

33.    While the Claimants appear to assert claims for "bodily injury," which the Policy defines as bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time," the Claimants do not allege "bodily injury" caused by an "occurrence," which is defined by the Policy as an accident, including continuous or repeated exposure to

substantially the same general harmful conditions.

34.     Therefore, the Westfield Policy is inapplicable to provide coverage for the various claims being asserted by the claimants against Dr. Matulis and Charleston Gastroenterology.

35.     With respect to the Claimants' claims for vicarious liability against Charleston Gastroenterology, the claims are not covered under the Policy due to the fact that there is no allegation that Dr. Matulis caused "bodily injury" to the Claimants as a result of an "occurrence" or accident.

36.     Therefore, the Westfield Policy is inapplicable to provide coverage for Charleston Gastroenterology Associates for the claims against it for vicarious liability.

37.     With respect to the Claimants' allegations that Charleston Gastroenterology was guilty of negligent and/or reckless retention of Dr. Matulis, inasmuch as Charleston Gastroenterology either knew or should have known that Dr. Matulis had sexually assaulted other female patients and had made sexually suggestive and inappropriate remarks and comments to female patients and employees of CAMC prior to the incident in question, the Policy includes relevant and applicable Exclusions.

38.     Exclusion **B.1.a. Expected Or Intended Injury** precludes coverage under the Policy for any "bodily injury" expected or intended from the standpoint of the Insured.

39.     The Westfield Policy also excludes coverage under **B.1.j. Professional Services** for any "bodily injury" caused by the rendering or failure to render any professional service, and includes, but is not limited to, medical, surgical or nursing services treatment, advice or instruction, or any health or therapeutic service treatment, advice or instruction.

40.     Exclusion **B.1.j. Professional Services** applies even if a claimant alleges negligence

or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by an insured, if the "occurrence" which caused the bodily injury involved the rendering or failure to render of any professional service.

41.     Exclusion **B.1.j. Professional Services** applies to the Claimants' claims against Charleston Gastroenterology Associates and Dr. Matulis, as such claims relate to and arise from the alleged sexual assaults perpetrated upon one or more of the Claimants by Dr. Matulis during the course of medical procedures (colonoscopies).

42.     In the event a class is certified in one or more of the underlying civil actions, coverage would not apply under the Westfield Policy for the claims of such a class or classes against Charleston Gastroenterology Associates or Dr. Matulis for the same reasons set forth hereinbelow with respect to the claims of the Claimants.

43.     An actual case or controversy exists between the parties to this action.

**WHEREFORE**, Westfield asks that the Court grant declaratory judgment to Westfield as follows:

a.     That the Westfield Policy does not provide coverage for the defense or indemnification of Charleston Gastroenterology Associates or Dr. Matulis for those claims asserted by the Claimants in connection with the alleged sexual assault of the Claimants and/or the provision of inadequate medical care to the Claimants at any time, including, but not limited to those claims set forth in Kanawha County Civil Action Nos. 16-C-497, 16-C-1155, 16-C-1709, 16-C-1723, 16-C-1738 and 16-C-1553, and such other actions that may be filed against Charleston Gastroenterology and/or Dr. Matulis, including any class or classes that may be certified in one or more of said underlying civil actions.

30053/118                                      15

b.      That Westfield has no duty to defend or indemnify Charleston Gastroenterology Associates and/or Dr. Matulis against those claims asserted by the Claimants in connection with the alleged sexual assault of the Claimants and/or the provision of inadequate medical care to the Claimants at any time, including, but not limited to those claims set forth in Kanawha County Civil Action Nos. 16-C-497, 16-C-1155, 16-C-1709, 16-C-1723, 16-C-1738 and 16-C-1553, and such other actions that may be filed against Charleston Gastroenterology and/or Dr. Matulis, including any class or classes that may be certified in one or more of said underlying civil actions.

c.      That Westfield is entitled to such further and additional relief as the Court deems just and proper.

**WESTFIELD INSURANCE COMPANY DEMANDS A TRIAL BY JURY AS TO ALL FACTUAL ISSUES, IF ANY.**

**WESTFIELD INSURANCE COMPANY,**

**By counsel,**

/s/ *Brent K. Kesner*

Brent K. Kesner (WVSB #2022)
Tanya M. Kesner (WVSB #5162)
**Kesner & Kesner, PLLC**
112 Capitol Street
P. O. Box 2587
Charleston, WV   25329
*Phone:* (304) 345-5200
*Fax:* (304) 345-5265
bkesner@kesnerlaw.com

**30053/118**                                        16